**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. 01-CV-80260-DT

CHARLES COOK,

    Defendant.

                                          /

**RE-SENTENCING ORDER**

This matter is before the court on remand from the United States Court of Appeals for the Sixth Circuit for re-sentencing in light of the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005). The court has received sentencing briefs from both parties and held a re-sentencing hearing on December 13, 2005.[1] For the reasons discussed below, the court will reimpose Defendant's original sentence of 120 months imprisonment.

---

[1] The parties submitted their original sentencing briefs in August of 2005, and the court began a re-sentencing hearing on November 8, 2005. At the hearing, Defendant raised a new argument related to "double-counting," which will be discussed *infra*. The court thus adjourned the hearing to allow the new issue to be fully briefed. The court's decision to adjourn the hearing was based, in large part, on allowing the government an opportunity to research the double-counting issue and prepare an appropriate response. Defendant timely filed his supplemental brief on November 14, 2005, but the government did not file its brief until a week past its deadline. More troubling to the court, however, is the fact that the government's three-paragraph brief fails to provide any reasoned response to Defendant's supplemental brief. Indeed, the government's brief does not contain a single citation to the factual record or to any legal authority, and instead relies on the Assistant United States Attorney's "memory" and general "review of the sentencing transcript." The government's conduct in this regard has been disrespectful to this court, opposing counsel, Defendant, and to the judicial system in general.

## I. BACKGROUND

Defendant Charles Cook was charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He was released on bond prior to trial. On September 4, 2001, a jury trial commenced. The next day, however, Defendant failed to appear for trial. The court continued the trial in Defendant's absence, and he was convicted by the jury on September 11, 2001.

At a hearing conducted on May 14, 2002, the court's initial application of the United States Sentencing Guidelines ("Sentencing Guidelines") resulted in an offense level of sixteen and a sentencing range of 27-33 months imprisonment. (*See* 5/14/02 Tr. at 3-4) During the hearing, however, it occurred to the court that the presentence investigation report had failed to address whether the cocaine found at the crime scene would affect Defendant's sentence. (*Id.* at 15-18.) Accordingly, the court instructed the Probation Officer to re-evaluate the situation to determine what effect, if any, the cocaine would have on Defendant's sentence. (*Id.* at 21-22.)

The court conducted a second hearing on June 20, 2002, at which the court found by a preponderance of the evidence that Defendant was in possession of the cocaine. The court further found that Defendant possessed the cocaine with the intent that it be distributed. Specifically, the court found that

> [T]he evidence that persuaded the jury beyond a reasonable doubt that the defendant was in possession of the firearm is in no way that I can think of distinguishable from the evidence that shows that the defendant was in possession of the seventeen plus grams of crack cocaine, plus packaging material. The crack cocaine was in the same secret compartment, side by side with a loaded firearm, associated with the crack cocaine, a very large quantity of crack cocaine, I might add; just orders of magnitude larger than any kind of personal-use quantity were this collection of empty ziploc bags.

> It's common knowledge that ziploc bags are used to package distributable quantities of crack cocaine as well as other controlled substances. . . .
>
> The jury found beyond a reasonable doubt that he was in possession of a firearm. This court finds, certainly by a preponderance of the evidence that he was in possession of the cocaine as well. If he knew the firearm was there, he certainly knew the cocaine was there. He was in possession of the firearm. He was just as easily in possession of the cocaine. And under the circumstances the possession of that quantity of cocaine, associated immediately with packaging material, repackaging material, proves by a preponderance of the evidence, if not even by a higher standard, that he was possessing the cocaine with the intent that it be distributed, which is a distribution offense and which validates the Probation Officer's use of the cross reference under 2(k)2.1(c)(1)(a).

(6/20/02 Tr. at 12-13.) Based on this finding, the court applied the cross reference provision of USSG § 2k2.1(c)(1) and found the appropriate offense level to be 30, with a sentencing range of 121 months to 151 months imprisonment. (*Id.* at 13-14.) Because the statutory maximum of Defendant's original charge was 120 months, the court sentenced Defendant to 120 months imprisonment. Defendant's sentence included three years supervised release and a $100.00 assessment fee. (*See* 6/20/2002 Judgment.) The court also recommended that Defendant be placed at a facility that offers a Comprehensive Drug Treatment Program. (*See id.* at 2.)

On appeal, Defendant's sentence, including the application of the cross-reference in USSG § 2K2.1(c), was initially affirmed by the Sixth Circuit Court of Appeals. *See United States v. Charles Cook*, No. 02-1827, slip op. (6th Cir. May 3, 2004). Specifically, the Sixth Circuit held that this court did not commit clear error in determining that Defendant possessed the firearm in connection with drug trafficking. *Id.* at 3. The Sixth Circuit noted:

> Cook was stopped by police officers who observed him commit a moving traffic violation. Cook could not produce a driver's license, registration, or proof of insurance. During the course of the traffic stop, the police officers

> conducted a pat-down search and discovered that Cook was wearing a bullet-proof vest.  The officers found a loaded handgun, more than seventeen grams of crack cocaine, and numerous Ziplock plastic bags – used to package distributable quantities of crack cocaine – side-by-side in a secret dashboard compartment where Cook was seen reaching as the officers approached his car.  The presence of that quantity of cocaine in the same secret compartment as repackaging materials justifies the district court's conclusion that Cook possessed the crack cocaine with the intent that it be distributed, and justifies the district court's application of § 2K2.1(c).

(*Id.* at 4.)

After the Sixth Circuit's opinion, however, the sentence was vacated and remanded for re-sentencing in light of the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005).   *See United States v. Charles Cook*, No. 04-5097, slip op. (U.S. Mar. 18, 2005); *United States v. Charles Cook*, No. 02-1827, slip op. (6th Cir. May 10, 2005).

Now before the court are sentencing briefs submitted by the government and by Defendant.  The government asks that the court impose the same sentence that it did on June 20, 2002.  Defendant argues that the court should impose the sentence recommended by the first presentence investigation report, 27-33 months imprisonment, which Defendant has already served.  Defendant thus requests that he be immediately released from incarceration to serve his three year term of supervised release.

## II.  STANDARD

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at 490.  The Supreme

4

Court applied this rule to state sentencing guidelines in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004).  The *Blakely* Court specified that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"  *Id.* at 2537 (emphasis in original).  The Court found that the defendant's enhanced sentence issued under the State of Washington's sentencing procedures violated the Sixth Amendment based on the rule in *Apprendi*.  *See id.* at 2538-39.

The United States Supreme Court has held that the rule set forth in *Blakely* applies to the United States Sentencing Guidelines.  *United States v. Booker*, 125 S.Ct. 738 (2005).  More specifically, the *Booker* Court applied the principles in *Blakely* to hold that the Sentencing Guidelines were unconstitutional insofar as they mandated that a defendant's sentence be increased based on facts not found by the jury beyond a reasonable doubt.  *Id.* at 755-56.  To remedy this constitutional violation, the Court severed two sections of the Sentencing Reform Act (the "SRA"), making the Sentencing Guidelines effectively advisory.  *See id.* at 756-67 (severing and excising 18 U.S.C. § 3553(b)(1) & § 3742(e)).

### III.  DISCUSSION

Relying on *Apprendi*, *Blakely*, and *Booker*, Defendant argues that "to apply the cross reference provision in USSG § 2K2.1(c)(1) and the two level firearm enhancement in USSG § 2D1.1(b)(1) to the facts and circumstances present in this case violates the Due Process Clause of the Fifth Amendment and the Sixth Amendment."  (Def.'s Br. at 6.)  Defendant maintains that "[t]he Indictment does not allege that he committed a felony involving cocaine base or any other felony while in possession of the firearm in

5

question on February 17, 2001." (*Id.* at 8.) Thus, because the jury did not expressly find these facts, Defendant argues that the court should not rely on them in imposing Defendant's sentence. Defendant cites a case from the United States District Court for the District of Nebraska for the proposition that "the court will not rely on facts proved to a mere preponderance of evidence in order to increase a defendant's sentence to any significant degree." *United States v. Huerta-Rodriguez*, 355 F. Supp. 2d 1019, 1029 (D. Neb. 2005). The court disagrees with this approach, and will decline to adopt the reasoning expressed by the court in *Huerta-Rodriguez.*

In *Huerta-Rodriguez*, the court acknowledged that "the limits of due process are defined with reference to the line that separates an element of a crime from a sentencing factor," *id.* at 1028 (citations omitted), but nonetheless concluded that "[t]hat line remains blurred after *Booker*," *id*. Thus, when determining what burden of proof to require for sentencing enhancements, the court decided to "err on the side of caution" and require that "facts that enhance a sentence [be] properly pled in an indictment or information, and either admitted, or submitted to a jury . . . for determination by proof beyond a reasonable doubt." *Id.* at 1028, 1029. In so holding, however, the court expressly admitted that the Supreme Court's opinion in *Booker* does not require this procedure. *See id.* at 1029 ("[A]lthough *Booker's* Sixth Amendment holding may not require this procedure, it is not precluded.").

The court disagrees with the Nebraska court's approach, and instead prefers the approach utilized by the court in *United States v. Coleman*, 370 F. Supp. 2d 661 (S.D. Ohio 2005). In *Coleman*, the court declared that in its post-*Booker* sentencings it would begin "by considering the applicable Guideline range as recommended by the probation

6

officer's report." *Id.* at 667. The court stated that next, it would consider the parties' objections and make any necessary factual findings for sentencing enhancements under the preponderance of the evidence standard. *Id.*[2] After determining what enhancements apply, the court would then evaluate the rest of the factors set forth in 18 U.S.C. § 3553(a)(1)-(7). *Id.*

The court finds this approach to best encapsulate the holding of *Booker*, and adopts it. Under Defendant's argument, the court is without discretion to find any facts which would enhance his sentence. The court rejects this argument as it is inconsistent with the holding in *Booker* and its progeny. Indeed, the *Booker* Court itself recognized that the Supreme Court has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *Booker*, 125 S.Ct. at 750 (citing *Apprendi,* 530 U.S. at 481; *Williams v. New York,* 337 U.S. 241, 246 (1949)).

In *Booker*, the Court found that it was the mandatory nature of the Sentencing Guidelines which made them incompatible with the Sixth Amendment. *See Booker,* 125 S.Ct. at 764 ("Without this provision--namely the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges'--the statute falls outside the scope of *Apprendi's* requirement"); *see also id.* at 750 ("[E]veryone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges."). This is why the Court chose to remedy the constitutional violation by rendering the Guidelines *advisory* rather than

---

[2] The court also noted that it would "no longer consider acquitted conduct when making a sentencing determination." *Coleman*, 370 F.Supp.2d at 667. Because this issue is not properly before this court, the court need not address it at this point.

*mandatory*. Thus, district courts may still consider the same evidence, and make the appropriate findings, under the applicable Sentencing Guidelines; once the applicable range is determined, however, the court must determine in its discretion whether this range is appropriate, after considering all the other factors in § 3553(a). *United States v. Oliver*, 397 F.3d 369, 380 n.3, 382 n.5 (6th Cir. 2005); *see also United States v. Jamieson*, 427 F.3d 394, 417 (6th Cir. 2005) ("As the *Booker* [C]ourt explained however, the district court must take the recommended guidelines into account when re-sentencing [the defendant]."); *United States v. McDaniel*, 398 F.3d 540 (6th Cir. 2005) ("Although the *Booker* Court severed and rendered inapplicable 18 U.S.C. § 3553(b)(1) and 3742(e), which made adherence to the Guidelines mandatory, the *Booker* Court also explained that sentencing courts should continue to consider the recommended Guidelines sentence.").

Thus, the court will continue to make findings of fact which may result in sentencing enhancements. The court will utilize a "preponderance of the evidence" standard to make the relevant findings of fact. *See United States v. Yagar*, 404 F.3d 967, 972 (6th Cir. 2005) ("[A] finding under the Guidelines must be based on reliable information and a preponderance of the evidence."); *see also Coleman*, 370 F. Supp. 2d at 667-68 ("[M]ost courts agree that judicial fact-finding [post-*Booker*] may be made by a preponderance of the evidence so long as the court is operating in an advisory regime.") (citing *Cirilo-Munoz v. United States,* 404 F.3d 527, 532-33 (1st Cir. 2005); *Guzman v. United States,* 404 F.3d 139, 143 (2d Cir. 2005); *United States v. Mares,* 402 F.3d 511, 519 (5th Cir. 2005); *Yagar,* 404 F.3d at 972; *McReynolds v. United States,* 397 F.3d 479, 481 (7th Cir. 2005)).

8

### A.  Applicable Guideline Range and Findings of Fact

For the reasons stated fully on the record at the June 20, 2002 hearing, and adopted at the December 13, 2005 hearing, the court finds by the preponderance of the evidence, that at the time of the offense, Defendant was not only in possession of a firearm, but he also possessed with the intent to distribute 17.15 grams of cocaine base. Based on this finding, the court will apply the cross-reference provision found in USSG § 2K2.1(c)(1)(a) to result in a base offense level of twenty-six and a criminal history category of III.  The court will also apply the two level obstruction of justice enhancement in USSG § 3C1.1 (based upon Defendant's flight from trial), which results in a total offense level of twenty-eight.

The only remaining issue is whether to apply the two-level firearm enhancement in USSG § 2D1.1(b)(1),[3] which would bring Defendant's total offense level to thirty.  In Defendant's November 14, 2005 supplemental brief, Defendant argues that to apply the two-level firearm enhancement would constitute impermissible "double-counting."  (*See* Def.'s Supp. Br. at 2.)  Defendant relies on *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999), in which the Sixth Circuit held: "we adhere in this case to our well-established rule that impermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways."  *Id.* The *Farrow* court also noted, however, that "not all instances of double counting are impermissible."  *Id.* at 194.

---

[3]The court notes that Defendant did not object to this two-level enhancement when originally sentenced, nor did he raise this issue on appeal.  It thus appears to the court that this issue is waived.  Moreover, the court is further inclined to believe that it is beyond the scope of the Sixth Circuit's remand order.  Nonetheless, for the reasons discussed above, the issue is moot in any event.

While the Sixth Circuit has not yet addressed this issue, there is some authority that, when a defendant has been convicted solely of being a felon in possession pursuant to 18 U.S.C. § 922(g), it indeed constitutes impermissible double-counting to apply both the cross-reference provision found in USSG § 2K2.1(c)(1)(a) and the two-level firearm enhancement in USSG § 2D1.1(b)(1).  *See United States v. Concepcion*, 983 F.2d 369, 390 (2nd Cir. 1992) ("To add to the narcotics offense level, chosen only to reflect the circumstances of the weapons offenses, an increment for possessing weapons is tantamount to adding an increase on the basis that the defendant possessed weapons in the course of possessing weapons.").  Nonetheless, other courts have upheld the two-level firearm enhancement in USSG § 2D1.1(b)(1) under similar circumstances.  *See, e.g., United States v. Dees*, 142 Fed.Appx. 362, 364 (11th Cir. 2005).  The court need not reach this issue, however, because the court would impose the same sentence whether or not it applies the two-level firearm enhancement.

For example, if the court does not apply the two-level firearm enhancement, Defendant's total offense level would be twenty-eight.  With his criminal history category of III, the applicable Guideline Range is 97 to 121 months imprisonment.  If, on the other hand, the court does apply the two-level firearm enhancement, Defendant's offense level would be thirty, making the applicable Guideline Range 121 to 151 months imprisonment.  The statutory maximum for this offense, under the charge listed in the indictment, is ten years.  *See* 18 U.S.C. § 924.  Thus, under either scenario the court is restricted to imposing a total sentence of the statutory maximum of 120 months imprisonment.  The court finds that, no matter which Guideline Range the court applies, the appropriate sentence for Defendant's conduct is 120 months imprisonment.  For

clarity of the record, the court will overrule Defendant's objection, apply the two-level firearm enhancement, and find that the appropriate offense level is thirty.[4]

Accordingly, the court finds that the Sentencing Guidelines call for a term of imprisonment of 120 months.

## B. Other Sentencing Factors

Having determined the appropriate guideline range and applicable sentencing enhancements, the court will now evaluate the rest of the factors set forth in 18 U.S.C. § 3553(a)(1)-(7).  Under 18 U.S.C. § 3553, the court is required to consider the following sentencing factors:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed–

 (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B)  to afford adequate deterrence to criminal conduct;
 (C)  to protect the public from further crimes of the defendant; and
 (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for–

 (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
  (I)  issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the

---

[4] The court reiterates, however, that even if the court concluded that the lower range of 97 to 121 months were applicable, the court would still impose a sentence of 120 months imprisonment.

        Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

  (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement–

  (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

  (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553 (a)(1)-(7). After considering these factors, the court concludes that the appropriate sentence is that which was recommended by the presentence investigation report and originally imposed by this court: 120 months imprisonment, three years supervised release under the conditions expressed on the record and noted in the Judgment, and a $100.00 assessment fee.

  In making this determination, the court notes that Defendant has numerous arrests and convictions, and that his previous punishments have not deterred him from

committing additional crimes.[5]  In this case, the circumstances surrounding his current conviction are sufficiently serious to justify imposition of the statutory maximum. Wearing a bullet proof vest in connection with the presence of a loaded handgun and over seventeen grams of cocaine base in a secret compartment of a car seem to the court indicative of a serious criminal state of mind.  Moreover, Defendant's flight from trial also bears consideration in connection with his sentencing.  Simply put, this is not the run of the mill felon in possession case.  In order to protect the public from future offenses of this Defendant and to specifically deter Defendant from continuing in his life as a career criminal, the court finds a significant penalty to be necessary.  The court finds this sentence to be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), and reasonable under the particular facts of this case.

In consideration of Defendant's request for substance abuse treatment, the court will recommend to the Bureau of Prisons that Defendant be placed at a facility offering a Comprehensive Drug Treatment Program.  Consistent with the practice of this court, however, the court will not recommend that Defendant be placed at any particular facility, but will instead leave that administrative decision to the discretion of the Bureau of Prisons.

### IV.  CONCLUSION

---

[5]Defendant also asks the court to take into consideration his "post sentencing rehabilitative efforts," in the form of his drug treatment programs and course completions.  (*See* Def.'s Supp. Br. at 3; Def.'s Ex. A-1 & A-2.)  As the court expressed on the record, while Defendant's efforts are certainly worthwhile, they do not justify a lower sentence under the facts of this case.

For the reasons discussed above and stated on the record at the December 13, 2005 Sentencing Hearing,

IT IS ORDERED that Defendant's objections are OVERRULED and Defendant is SENTENCED in accordance with the Judgment entered on December 13, 2005.

      S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: December 12, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 12, 2005, by electronic and/or ordinary mail.

      S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\Even Orders\01.80260.COOK.BookerResentencing.wpd