**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                           Case No. 01-CR-80260-DT

CHARLES COOK,

    Defendant.
                                             /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO MODIFY
SENTENCE AND TERMINATING DEFENDANT'S MOTION FOR ORDER**

Before the court is Defendant Charles Cook's motion to modify his sentence, filed under 18 U.S.C. § 3582(c)(2). The court has reviewed the motion and accompanying sentencing memorandum, and has considered the stipulation submitted by the parties. For the reasons set forth below, the court will grant Defendant's motion to modify his sentence and terminate Defendant's "Motion for Order on Stipulation."

## I. BACKGROUND[1]

Defendant Charles Cook was charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He was released on bond prior to trial. On September 4, 2001, a jury trial commenced. The next day, however, Defendant failed to appear for trial. The court continued the trial in Defendant's absence, and he was convicted by the jury on September 11, 2001.

At a hearing conducted on May 14, 2002, the court's initial application of the United States Sentencing Guidelines ("Sentencing Guidelines" or "USSG") resulted in

---

[1] The Background facts are taken in large part from the court's December 15, 2005 "Re-sentencing Order."

an offense level of sixteen and a sentencing range of 27 to 33 months imprisonment. (*See* 5/14/02 Tr. at 3-4) During the hearing, however, it occurred to the court that the presentence investigation report had failed to address whether the cocaine found at the crime scene would affect Defendant's sentence. (*Id.* at 15-18.) The court learned that the Assistant United States Attorney had not provided the Probation Officer with the case reports, and the Probation Officer therefore did not know about the cocaine. Accordingly, the court instructed the Probation Officer to re-evaluate the situation to determine what effect, if any, the cocaine would have on Defendant's sentence. (*Id.* at 21-22.)

On June 20, 2002, the court conducted a second hearing, during which the court found by a preponderance of the evidence that Defendant was in possession of the cocaine base. The court further found that Defendant possessed the cocaine with the intent that it be distributed. Specifically, the court found that

> [T]he evidence that persuaded the jury beyond a reasonable doubt that the defendant was in possession of the firearm is in no way that I can think of distinguishable from the evidence that shows that the defendant was in possession of the seventeen plus grams of crack cocaine, plus packaging material. The crack cocaine was in the same secret compartment, side by side with a loaded firearm, associated with the crack cocaine, a very large quantity of crack cocaine, I might add; just orders of magnitude larger than any kind of personal-use quantity were this collection of empty ziploc bags.
>
> It's common knowledge that ziploc bags are used to package distributable quantities of crack cocaine as well as other controlled substances. . . .
>
> The jury found beyond a reasonable doubt that he was in possession of a firearm. This court finds, certainly by a preponderance of the evidence that he was in possession of the cocaine as well. If he knew the firearm was there, he certainly knew the cocaine was there. He was in possession of the firearm. He was just as easily in possession of the cocaine. And under the circumstances the possession of that quantity of cocaine, associated immediately with packaging material, repackaging

> material, proves by a preponderance of the evidence, if not even by a
> higher standard, that he was possessing the cocaine with the intent that it
> be distributed, which is a distribution offense and which validates the
> Probation Officer's use of the cross reference under 2(k)2.1(c)(1)(a).

(6/20/02 Tr. at 12-13.) Based on this finding, the court applied the cross-reference provision of USSG § 2k2.1(c)(1) and found the appropriate offense level to be 30, with a sentencing range of 121 months to 151 months imprisonment. (*Id.* at 13-14.) Because the statutory maximum of Defendant's original charge was 120 months, the court sentenced Defendant to 120 months imprisonment. Defendant's sentence included three years supervised release and a $100.00 assessment fee. (*See* 6/20/2002 Judgment.) The court also recommended that Defendant be placed at a facility that offers a Comprehensive Drug Treatment Program. (*See id.* at 2.)

On appeal, Defendant's sentence, including the application of the cross-reference in USSG § 2k2.1(c), was initially affirmed by the Sixth Circuit Court of Appeals. *See United States v. Charles Cook*, No. 02-1827, slip op. (6th Cir. May 3, 2004). Specifically, the Sixth Circuit held that this court did not commit clear error in determining that Defendant possessed the firearm in connection with drug trafficking. *Id.* at 3. The Sixth Circuit noted:

> Cook was stopped by police officers who observed him commit a moving
> traffic violation. Cook could not produce a driver's license, registration, or
> proof of insurance. During the course of the traffic stop, the police officers
> conducted a pat-down search and discovered that Cook was wearing a
> bullet-proof vest. The officers found a loaded handgun, more than
> seventeen grams of crack cocaine, and numerous Ziplock plastic bags –
> used to package distributable quantities of crack cocaine – side-by-side in
> a secret dashboard compartment where Cook was seen reaching as the
> officers approached his car. The presence of that quantity of cocaine in
> the same secret compartment as repackaging materials justifies the
> district court's conclusion that Cook possessed the crack cocaine with the

intent that it be distributed, and justifies the district court's application of § 2k2.1(c).

(*Id.* at 4.)

After the Sixth Circuit's opinion, however, the sentence was vacated and remanded for re-sentencing in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Charles Cook*, No. 04-5097, slip op. (U.S. Mar. 18, 2005); *United States v. Charles Cook*, No. 02-1827, slip op. (6th Cir. May 10, 2005). On remand, the court first determined that the applicable guideline range was 121 to 151 months, but that the court was restricted by the statutory maximum to 120 months. (See 12/15/05 Order at 10-11.) The court rejected Defendant's argument that the applicable guideline range was 97 to 121 months, but found that even if it were 97 to 121 months, the court would nonetheless impose the same sentence of 120 months. (*Id.* at 10-11 & n.4.) The court then considered the now-discretionary guideline range and the other factors under 18 U.S.C. § 3553(a) and re-sentenced Defendant to 120 months imprisonment. Defendant appealed, and the Sixth Circuit affirmed this court's sentence. *United States v. Charles Cook*, No. 05-2731, slip op. (6th Cir. Mar. 26, 2007).

On November 1, 2007, the Sentencing Commission lowered the offense levels assigned to cocaine base crimes in an effort to correct the disparity between sentences for cocaine base offenses and other drug offenses. U.S. Sentencing Guidelines Manual app. C amend. 706 (2007). On March 3, 2008, these amendments became retroactive. USSG app. C amend. 716 (Supp. May 1, 2008). Defendant subsequently filed a motion to reduce his sentence. The parties now stipulate that Defendant is eligible for a

4

reduction pursuant to 18 U.S.C. § 3582(c)(2) based upon Amendment 706 and 711, and that the court has the discretion to grant this reduction. (4/10/08 Stip.) They further stipulate that Defendant's total offense level under the amended Guidelines is 28, and his new sentencing range is 97 to 121 months.[2] (*Id.*)

## II. STANDARD

A district court may reduce a defendant's sentence if modification is authorized by statute. *United States v. Ross*, 245 F.3d 586 (6th Cir. 2001). 18 U.S.C. § 3582(c)(2) allows a court to "reduce the term of imprisonment" "in the case of a defendant who has been sentenced . . . based on a sentencing range that has subsequently been lowered by the Sentencing Commission," provided that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The Sentencing Commission has issued a policy statement regarding sentence reductions pursuant to § 3582(c)(2), which (1) outlines those situations in which a prisoner is eligible for a reduction under the statute, (2) lists the factors a court must take into account when considering a defendant's sentence reduction and (3) puts limitations on the extent to which a court may reduce a sentence. *See* U.S.S.G. § 1B1.10.

---

[2]In Defendant's *pro se* motion, he attempted to revive his earlier-rejected argument that applying a firearm enhancement in this case constitutes impermissible "double-counting." After the court appointed counsel to represent him, however, he appears to have abandoned this argument inasmuch as the argument was not addressed, or even mentioned, in the parties' stipulation. The court deems this issue waived. Moreover, even if the issue was not *now* waived, the court held in its December 12, 2005 order that issue was not properly before the court because (1) Defendant did not object to the two-level enhancement at his initial sentencing, (2) Defendant did not raise the two-level enhancement on appeal, and (3) the issue was not within the scope of the Sixth Circuit's mandate. For all of these reasons, the court again concludes that Defendant has waived the issue.

First, § 3582(c)(2) can apply only to those amendments listed in its subsection (c), U.S.S.G. § 1B1.10(a)(1), which as of March 3, 2008 includes the amendment modifying the guideline range for cocaine base offenses.[3]  *See* U.S.S.G. § 1B1.10(c) ("Covered Amendments. . . . 706 as amended by 711 . . . .").  Section 3582(c)(2) does not cover those defendants to whom no subsection (c) amendment applies, U.S.S.G. § 1B1.10(a)(2)(A), nor those for whom an applicable subsection (c) amendment would have no lowering effect.  U.S.S.G. § 1B1.10(a)(2)(B).

Second, when deciding whether and to what extent to reduce a defendant's sentence under § 3582(c)(2), the court must consider those factors listed in the policy statement.  A prisoner is not guaranteed a sentence reduction pursuant to § 3582(c)(2) as a matter of right; rather, the court has the discretion to deny a § 3582(c)(2) motion.  *United States v. Ursery*, 109 F.3d 1129, 1137 (6th Cir. 1997); *see also* 18 U.S.C. § 3582(c)(2) ("[T]he court *may* reduce the term of imprisonment . . . ." (emphasis added)).  When exercising this discretion, the court must first take into account "the amended guideline rage that would have been applicable to the defendant if the amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced."  U.S.S.G. § 1B1.10(b)(1).  When deciding the amended guideline range, "the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected."  *Id.*  Additionally, the court must take

---

[3]The Sentencing Commission made retroactive Amendment 706's lower ranges for cocaine base offenses by amending its policy statement on 18 U.S.C. § 3582(c)(2) to include 706 as one of amendments to which the statute can apply.  *See* U.S.S.G. § 1B1.10(c).

into consideration the factors set forth in 18 U.S.C. § 3553(a),[4] U.S.S.G. § 1B1.10 cmt. n.1; 18 U.S.C. § 3582(c)(2), and "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." U.S.S.G. § 1B1.10 cmt. n.1. Finally, "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." *Id.*

Third, if the court decides to grant a § 3582(c)(2) motion, there are some limitations on the extent to which a defendant's sentence may be reduced. The court cannot reduce a sentence to below the minimum of the amended guideline range, U.S.S.G. § 1B1.10(b)(2)(A), unless "the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of the sentencing." U.S.S.G. § 1B1.10(b)(2)(B). If this is the case, "a reduction comparably less than the amended guideline range . . . may be appropriate." *Id.* However, "if the original term of imprisonment constituted a non-guideline sentence determined pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005), a further reduction generally would not be appropriate." *Id.* Finally, the reduced sentence can never be lower than time already served by the defendant. U.S.S.G. § 1B1.10(b)(2)(C).

---

[4]These factors are (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to reflect the purposes of penal punishment, including retributivism, deterrence, incapacitation, and rehabilitation, (3) the kinds of sentences available, (4) the applicable sentencing range under the guidelines, (5) any pertinent policy statement issued by the Sentencing Commission, (6) the need to avoid unwarranted sentencing disparities and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a).

## III. DISCUSSION

The court agrees with the stipulation that Defendant is eligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), as construed in the Sentencing Commission's policy statement, due to Amendment 706 to the Guidelines. Amendment 706 is listed in subsection (c) of the policy statement, U.S.S.G. § 1B1.10(a)(1), (c), and it both applies to and would have a lowering effect on Defendant's sentencing range. U.S.S.G. § 1B1.10(a)(2). Thus, the court must determine, in light of Defendant's amended guideline range, whether the factors listed in 18 U.S.C. § 3553(a), public safety considerations, and Defendant's post-sentencing conduct recommend a sentence reduction.

The parties stipulate that Defendant is eligible for an amended guideline range of 97 to 121 months imprisonment. (Stip. at 1.) The court has already found, in its December 12, 2005 Order, that even if Defendant's sentencing guideline range were 97 to 121 months, the court would still impose the statutory maximum sentence of 120 months. (See 12/15/05 Order at 10-11, & 11 n.4.) The court is, of course, not bound by its prior inclination in the context of this proceeding. Looking at the issue anew, under the instant motion, the court is persuaded that Defendant's sentence should be slightly reduced.

The decision of whether to grant a reduction of sentence is within the court's discretion. The court must take into consideration the factors set forth in 18 U.S.C. § 3553(a), U.S.S.G. § 1B1.10 cmt. n.1, 18 U.S.C. § 3582(c)(2), and "the nature and seriousness of the danger to any person or the community that may be posed by a

reduction in the defendant's term of imprisonment." U.S.S.G. § 1B1.10 cmt. n.1.  Given the nature of Defendant's offense, there is a some degree of danger posed to the community in the event the court were to greatly reduce Defendant's sentence.  As stated in the court's previous re-sentencing order imposing a sentence of 120 months imprisonment:

> In making this determination, the court notes that Defendant has numerous arrests and convictions, and that his previous punishments have not deterred him from committing additional crimes. In this case, the circumstances surrounding his current conviction are sufficiently serious to justify imposition of the statutory maximum.  Wearing a bullet proof vest in connection with the presence of a loaded handgun and over seventeen grams of cocaine base in a secret compartment of a car seem to the court indicative of a serious criminal state of mind. Moreover, Defendant's flight from trial also bears consideration in connection with his sentencing. Simply put, this is not the run of the mill felon in possession case. In order to protect the public from future offenses of this Defendant and to specifically deter Defendant from continuing in his life as a career criminal, the court finds a significant penalty to be necessary. The court finds this sentence to be "sufficient, but not greater than necessary," see 18 U.S.C. § 3553(a), and reasonable under the particular facts of this case.

(12/15/05 Order at 10-11.)  The court maintains that the circumstances surrounding Defendant's conviction as well as his background justify a sentence at least at the mid-point of his guideline range, and even higher if the court were restricted to the facts as they existed when the court issued its December 12, 2005 re-sentencing order.

However, in exercising its discretion "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." U.S.S.G. § 1B1.10 cmt. n.1.  While the court takes into account its previous analysis of the relevant sentencing factors, the court finds that Defendant's post-sentence conduct reflects an attempt to rehabilitate himself and justifies a moderate sentencing reduction.  Defendant has remained relatively incident-free since

9

his incarceration[5] and has completed multiple education courses and a Drug Abuse

Education Program. Additionally, he has attained Community Custody status, which the

court understands is somewhat difficult to achieve. The court customarily expects

criminal defendants to take such self-improvement efforts while in custody. Defendant's

efforts, however, have been above-average, and the court will modify his sentence to

reflect the importance of his efforts and to encourage such efforts in others. The

court will reduce Defendant's sentence to 109 months imprisonment, thereby converting

his ten-year sentence to a nine-year sentence. The court will not further reduce his

sentence to the low-end of the guideline range, 97 months, because, as discussed

above, the underlying conviction demands a serious sentence.

## V. CONCLUSION

For the reasons discussed above, IT IS FURTHER ORDERED that Defendant's

July 8, 2008 motion for order on stipulation [Dkt. # 99] is TERMINATED.[6]

---

[5] Defendant received a minor infraction in 2004 for possessing unauthorized items (stamps) and, on September 3, 2008, reported late to Loretto, Pennsylvania, resulting in him being placed, briefly, on a technical "escape" status.

[6] The court is fairly mystified as to why Defendant, through his Federal Defender's Office counsel, filed a "Motion for Order on Stipulation" [Dkt. # 99]. In that motion, filed July 9, 2008, Defendant requested that the court "enter an Order based upon the [April 9, 2008] Stipulation reducing the [Defendant's] sentence to 97 months." It is unclear why counsel believed it necessary, or advisable, to bring a motion in July requesting the court to rule on a motion that had been filed in March [Dkt. # 93], supported by a stipulation that had been filed in April [Dkt. # 98] all of which sought relief from the terms of a sentence not set to expire for another two years. Only if counsel thought Defendant to have been *entitled* to the maximum conceivable sentence reduction to a total of 97 months and that a corresponding sentence reduction *must* be entered would such a motion make sense to this court, since only with a full 23-month reduction would Defendant's projected release date have been advanced to late October or early November of 2008. Moreover, the court understands, through staff, that Defendant's counsel made multiple telephone inquiries of the court's staff as to when he could expect a ruling, and that court staff assured counsel that the court was

IT IS FURTHER ORDERED that Defendant's February 29, 2008 motion to modify sentence [Dkt. # 93] is GRANTED. A separate amended judgment will issue.

            S/Robert H. Cleland
            ROBERT H. CLELAND
            UNITED STATES DISTRICT JUDGE

Dated: October 24, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 24, 2008, by electronic and/or ordinary mail.

            S/Lisa Wagner
            Case Manager and Deputy Clerk
            (313) 234-5522

---

well aware of the motion and the April stipulation and that the court would rule on it in due course. Demonstrating extraordinary impatience, counsel proceeded to mail a letter to the Chief Judge of this district requesting that the Chief Judge somehow "transfer" this matter to another judge. A copy of the letter appears to have been sent to the Assistant United States Attorney, but *not to this court.* The Chief Judge, having no authority to grant the unusual request made by counsel, forwarded the letter to this court.

  The court has never before been exposed to this kind of secret, back-door communication by counsel. The professional reputation of the Federal Defender's Office is not enhanced by such tactics. There is, of course, no authority on which an attorney could reasonably rely to request a Chief Judge to unilaterally remove a matter from the docket of one judge and reassign it to another. Any competent attorney familiar with the local rules of this court should be aware of that fact. Finally, the court is aware of no authority – Defendant certainly cites none – which supports the concept of a litigant filing a motion asking the court to rule on a pending motion. The pending motion itself seeks exactly the same relief. While this court in fact *invites* counsel to inquire informally of court staff in an effort to remind the court of a needed ruling (thus potentially alerting the court to a motion that had become inadvertently neglected), such was done in this case and counsel was clearly informed that the court was fully aware of the motion. Counsel are expected to know that a conscious decision by a court to continue its deliberation on a pending motion, avoiding for the time being ruling on the same, amounts to an implicit denial of any request for immediate consideration.

  In the best light, counsel's conduct in this regard was zealous advocacy, albeit misdirected. In a less charitable light, his conduct wasted the time and distracted the resources of this court, and those of the Chief Judge, through impertinent, inappropriate and unsustainable means. In any event, the court will terminate Defendant's ill-advised "Motion for Order on Stipulation" as moot.